IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 23, 2013 Session

GEORGE EMRICH, ET AL. v. TAYLOR ADAMS, ET AL.

Appeal from the Chancery Court for Loudon County
No. 11562      Frank V. Williams, III,

No. E2012-00725-COA-R3-CV-FILED-MARCH 26, 2013

In this post-trial dispute George Emrich and Mary Emrich ("Plaintiffs") appeal the Trial Court's order on Taylor Adams, Wanda Adams, and Adams Roofing Company, LLC's ("Defendants") emergency motion for relief from order and Plaintiffs' motion for sanctions, among other things. We find no error in the Trial Court's March 9, 2012 order, and we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., and JOHN W. MCCLARTY, J., joined.

Terry G. Vann, Lenoir City, Tennessee, for the appellants, George Emrich and Mary Emrich.

Robert G. Hinton, Lenoir City, Tennessee, for the appellees, Taylor Adams, Wanda Adams, and Adams Roofing Company, LLC.

OPINION

Background

The underlying suit in this appeal concerned a roadway. Plaintiffs sued Defendants and Loudon County Fence, LLC. After a trial the Trial Court entered its Final Judgment on January 25, 2011 finding and holding, *inter alia*, that settlement had been reached between Plaintiffs and Loudon County Fence, LLC; and that Defendants stipulated that the fence and gates encroached upon the State of Tennessee right-of-way, that the State had ordered said encroachments be removed, and that Defendants had agreed to remove said encroachments. Defendants filed a notice of appeal of the January 25, 2011 order. On May

27, 2011 this Court entered an order dismissing the appeal pursuant to Tenn. R. App. P. 15(a).

In June of 2011, Plaintiffs filed a motion seeking to compel Defendants to comply with the January 25, 2011 order. After a hearing the Trial Court entered an order on June 13, 2011 finding and holding, *inter alia*:

1. **THAT** on December 21, 2010, Plaintiffs were ruled to be the true and lawful owners, in fee, of the parcel of real property as described in Deed Book 335, Page 315 in the Register of Deeds for Loudon County, Tennessee; and **that**, as such, Plaintiffs are entitled to independent and uninterrupted possession, use, and enjoyment thereof. Located according to survey of Luther D. Hayes, Drawing B-1164, on the record of this cause as an exhibit at trial.

2. **THAT** Judgment in this cause became final on February 23, 2011.

3. **THAT** Plaintiffs' [sic] served notice on Defendants' [sic] Adams to vacate subject property, to remove all encroachments thereon, and to return/restore said property to its original condition and topography; and **that** to date - which is over 5 ½ months since the ruling of this Court and 3 ½ months since said ruling became final - Defendants' [sic] have failed to do so.

It is, therefore, **ORDERED, ADJUDGED and DECREED** as follows:

1. **THAT** Plaintiffs' Motion to Compel Compliance and for Permanent Injunction are granted against Defendants Taylor Adams, Wanda Adams, and Adams Roofing Company, LLC (hereinafter referenced as "Defendants Adams").

2. **THAT** Defendants Adams are ordered to comply with the original ruling of this Court; and **that, therefore,** Defendants Adams are ordered to vacate subject property, to remove all encroachments thereon, and to return/restore said property to its original condition and topography by no later than the 15th day of July, 2011.

3. **THAT** Defendants Adams are permanently enjoined from future encroachments and any/all interference with Plaintiffs' usage and enjoyment of subject property.

4. **THAT** Defendants Adams' failure to comply with this Order shall result

in said Defendants being found in contempt and being fined the sum of $100.00 per day for each and every day Defendants remain in violation of said Order, for which execution may issue if necessary; **that** Plaintiffs are then, upon notice to this Court and to Defendants Adams, authorized to obtain the services of a contractor to perform all necessary work of restoring subject property to its original condition and topography with the full costs thereof being taxed to Defendants Adams, for which execution may issue if necessary; **that** said contractor shall have the right to entry upon Defendants Adams' parcel if necessary to complete said vacation and restoration; and **that** Plaintiffs will not be held liable for damage and/or replacement of any encroachments so removed. **THAT** the Defendants are enjoined from interfering/hindering contractor if such action becomes necessary.

On July 15, 2011 at 4:05 p.m. Defendants filed an Emergency Motion for Relief from Order alleging that Defendant Taylor Adams had suffered health problems requiring hospitalization and surgery and that problems had arisen which required "the need for the parties to apparently negotiate and/or agree as to the suitable useage and/or realignment of the roadway and fence, and how to deal with the Plaintiffs' survey staking …," and requesting that the court extend the time for compliance an additional thirty days. Also on July 15, 2011, five minutes after Defendants filed their emergency motion for relief, Plaintiffs filed notice that they were going to obtain the services of a contractor in accordance with the Trial Court's June 13, 2011 order.

On July 18, 2011 Plaintiffs filed a motion for sanctions against Defendants alleging, in part, that Defendants were in contempt and that Defendants' emergency motion for relief was unfounded and only "serve[d] to elude and evade justice in this cause."

On December 19, 2011 Plaintiffs filed a document titled "Memorandum of Law: 'Doctrine of Clean Hands'" On December 20, 2011 Defendants filed an Emergency Motion for Continuance asking the Trial Court to continue the hearing set for Wednesday, December 21, 2011 on Plaintiffs' motion for sanctions and alleging, in part:

1. On Monday afternoon, December 19, 2011, at approximately 12:30 p.m., counsel for Adams received a 26 page "Response to Motion for Relief from Order" (as filed by Adams on July 15, 2011), which included various allegations, spurious and frivolous claims, apparently new causes of action, and a legal brief regarding previous matters which were litigated in December, 2011. Counsel for Adams has reason to believe that these motions and pleadings were filed in violation of Rule 11, Tennessee Rules of Civil Procedure, since the facsimile bears the address "Kings Inn," and he intends,

after a through investigation, to move for sanctions against Mary Emrich. At this time, counsel has had a few minutes only to review these allegations and cannot respond accordingly. Further, counsel is unable to ascertain the legal impetus of these motions other than for the sole purpose to harass Adams, and now counsel, by the continued filing of frivolous motions, the making of anonymous mailings to Adams, and the filing of complaints with the Board of Professional Responsibility against counsel.

* * *

3. Subsequent to the filing of the Emergency Motin [sic] for Relief from Order on July 15, 2011, counsel for Defendant has reason to believe that Mary Emrich filed and recorded miscellaneous pleadings without her attorney's signature, and the Loudon County Register of Deeds Office, all in violation of Rule 11, and she should be sanctioned. Further, she continues to file pleadings without reviewing same with her attorney, and she has apparently acquired some type of rubber stamp bearing her attorney's name. Counsel for Defendant has further discovered that Mary Emrich was a former employee of her attorney, and therefore had access to a signature facsimile.

On January 20, 2012 Plaintiffs filed a Response and an Affidavit of Plaintiffs' counsel which stated, in pertinent part: "**THAT** no documents have been prepared and/or filed by Plaintiff Mary Emrich, nor anyone else in this cause, without my signature, without my approval, and at my specific direction; and **that** no Rule 11 violations have taken place in this cause by me, nor the Plaintiffs."

The Trial Court held a hearing on the pending motions in February of 2012. Plaintiff Mary Emrich testified at the hearing. Ms. Emrich testified that the fence at issue was taken down on August 9, 2011. Ms. Emrich also testified that it would cost "about $40,000.00, depending on the price of diesel" to restore the topography of the road.

Ms. Emrich was asked: "Isn't it true that that roadway, before Mr. Adams built his facility, was the equivalent of the old sunken road at the Battle of Shiloh? I mean it was awful, wasn't it?" She replied: "We used it. It was a road - - … It was a solid, gravel base that - - … - - big Bowater trucks could haul on." Ms. Emrich also was asked if the road was chained off to keep intruders from trespassing and partying and she stated: "No…. It was used for people to party. We were trying to - - we used it to get to our house. And you could get through to Waller Ferry Road. And we chained it off - - chained it off to keep trespassers out so that they wouldn't party there on the weekends."

Ms. Emrich admitted filing a complaint about Defendants' attorney with the Board of Professional Responsibility, and she stated:

> And I did not turn you into the board because of some complaint. I asked the board if they would help in collecting the money that had been owed for a year - - over a year. Over 14 months. It wasn't a complaint. It was ask for help to collect the money that was owed. You're part of what was owed. We were running up attorney bills.

Ms. Emrich testified that she never signed her attorney's name to anything, but that she did file things for him. Ms. Emrich admitted when asked that she ran an attachment without her attorney's knowledge. She stated: "Because I asked the Court how could I take care of it. And the clerk of court in Roane County told me how to do it." When asked if she wrote the document titled "Memorandum of Law: 'Doctrine of Clean Hands,'" Ms. Emrich stated: "I didn't author it. I wrote - - did the research for it, for Mr. Vann for it." During the hearing, Defendants' attorney stated that any allegations implied or expressed against Plaintiffs' attorney were withdrawn.

After the hearing the Trial Court entered its order on March 9, 2012 finding and holding, *inter alia*:

> 1. Adams' Emergency Motion for Relief from Order with Supplemental Affidavit by Attorney Robert G. Hinton, as filed July 15, 2011, at 4:05 p.m. is SUSTAINED, given the then medical condition of Taylor Adams, the subsequent medical condition of Taylor Adams, and Emrichs' Subpoena of medical records indeed verified that Adams was in the hospital and ill, and he was entitled to a reasonable extension of time for compliance with the previous Court Order, being an additional thirty (30) days up and through August 19, 2011.
>
> 2. Adams promptly complied with the July 13, 2011 Order upon his release from the hospital in early August 2011 by removing the fence and restoring the Emrich property to its previous status.
>
> 3. The Court orders the release of all recorded liens as filed by Emrich in the Roane County Register of Deeds Office and the Loudon County Register of Deeds Office in regard to any so-called judgments, Court Orders, or notices which are recorded against Adams' property.

4.  The return of all subpoenaed medical records of Taylor Adams shall be delivered to Attorney Robert G. Hinton, and all other medical records in the Court's file shall be destroyed.

5.  The Court FINDS sufficient reason and justification for Attorney Hinton's filing for additional time based upon his July 15, 2011 affidavit. The affidavit and the Emergency Motion had merit in July 2011, and have merit on February 13, 2012.

6.  The Court, after hearing the sworn testimony of Mary Emrich, acknowledges and FINDS that she was using the Tennessee Supreme Court/Board of Professional Responsibility (by virtue of her ethics complaint against Attorney Hinton) as a collection agency in regard to a previous $5,000.00 sanction against Defendant Taylor Adams for non-compliance with discovery requests.

7.  The Court further FINDS that Mary Emrich's conduct is unconscionable and is an abuse of the ethics process.

8.  The Court further FINDS that Mary Emrich was using the ethics system to manipulate Attorney Robert G. Hinton, and her conduct is outrageous, intolerable, and was maliciously done against Attorney Robert G. Hinton.

9.  The Court further FINDS that Attorney Robert G. Hinton is a good lawyer who does a good job and is an honest man and is an officer of the Court, and he was simply presenting the facts to the Court as were presented to him at that time, and he did not mislead the Court.

10.  The Court further DENIES all further requested relief as filed by the Emrichs in their numerous pleadings, supplements, and supplements to pleadings, said pleadings not being timely, and are "way too late," and are "garbage."

11.  The Court further FINDS that Attorney Hinton's Emergency Motion for a Continuance, as filed December 20, 2011, was with merit based upon the 26-page response to Motion for Relief of Order as faxed to Attorney Hinton from the King's Inn of Lenoir City, Tennessee on December 19, 2010. The Court makes no finding as to Emrichs' unauthorized practice of law, said request withdrawn.

12.  The Court further FINDS that the requested relief as to Attorney Terry Vann's attorney fees, entitled "Post-Judgment Costs Due to Defendants' Failure to Comply," along with Plaintiff Emrichs' request for $40,000.00 for the hiring of a contractor and/or restoration construction activity is DENIED and is not timely or warranted or with merit.

13.  Based upon Attorney Hinton's representation to the Court that any intimation as to unprofessional and/or unethical conduct by Attorney Terry Vann or his condoning of the unauthorized practice of law is not for the Court's consideration, and Attorney Hinton's representations that that was not his intention as to Attorney Terry Vann, the Court accepts Attorney Hinton's representations.

Plaintiffs appeal to this Court.

## Discussion

We quote the issues raised on appeal by Plaintiffs as follows:

(1) Did trial court err when it failed to enforce the June 13, 2011 Agreed Order as written; but, in effect, set aside and/or substituted its own contract? ….
(2) Did trial court err when it violated Plaintiffs' constitutional rights - - to free petition fo [sic] redress; free communication; property ownership; or due process? ….
(3) Did trial court err when it failed to rule on the evidence, and ruled contrary to weight and preponderance of the documentary evidence coupled with that presented by Plaintiff's and witness' testimony, and surveyor's and attorney's affidavits? ….
* * *
(1) Did trial court err when it granted Defendant Contractors' relief from an Agreed Order for which no fraud or mistake was claimed or found? ….
(2) Did trial court err when it granted Defendant Contractors' retroactive relief in their *emergency* motion which they never set for hearing for over 8 months? ….
* * *
(1) Did the trial court err when it denied Plaintiffs [sic] Motion for Sanctions? ….
(2) Did the trial court err when failed [sic] to rule from the evidence as to whether Plaintiffs were guilty of unauthorized practice of law? ….

-7-

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We first consider whether the Trial Court failed to enforce its June 13, 2011 order and instead set its order aside and substituted a court created contract. Nothing in the record on appeal supports Plaintiffs' assertion that the Trial Court failed to enforce its June 13, 2011 order. Furthermore, although Plaintiffs refer repeatedly in their brief on appeal to the June 13, 2011 order as a 'consent' order or decree, the June 13, 2011 order was, on its face, an order entered after a hearing on Plaintiffs' motion for contempt. Nothing about the June 13, 2011 order constituted a settlement agreement, consent order, or contract. Plaintiffs stated in their brief on appeal that the June 13, 2011 order was "a negotiated agreed order." The record before us on appeal simply does not support this assertion. The fact that one or more of the parties or their attorney may have referred to the order using this terminology does not change the character of the actual order. As our Supreme Court has stated: "the court speaks through its order, not through the transcript." *In re Adoption of E.N.R.*, 42 S.W.3d 26, 31 (Tenn. 2001). There is nothing contained in this order showing that it is anything other than an order of the Trial Court. Our resolution of this issue, however, would be unchanged even if we treated it as an agreed order. This issue is without merit.

On a related note, Plaintiffs assert in their brief on appeal that the Trial Court, in entering its March 9, 2012 order, approved a proposed order that allegedly contained "numerous errors and inaccuracies." The alleged errors and inaccuracies as delineated in Plaintiffs' brief refer to statements made during the hearing which, allegedly, do not match the wording in the March 9, 2012 order. As noted above, however, "the court speaks through its order, not through the transcript." *In re Adoption of E.N.R.*, 42 S.W.3d at 31. Again, these assertions made by Plaintiff are without merit.

We next consider whether the Trial Court "violated Plaintiffs' constitutional rights - - to free petition fo [sic] redress; free communication; property ownership; or due process." Although difficult to discern exactly what Plaintiffs are complaining about when raising this issue, it appears that they are asserting that the Trial Court violated Plaintiffs' rights when it made findings about Plaintiffs' attempts to use the Board of Professional Responsibility as a collection agency.

A careful and thorough review of the record on appeal reveals that Plaintiff Mary Emrich testified that she filed the complaint with the Board of Professional Responsibility for "help in collecting the money …." The Trial Court specifically found:

> 6. The Court, after hearing the sworn testimony of Mary Emrich, acknowledges and FINDS that she was using the Tennessee Supreme Court/Board of Professional Responsibility (by virtue of her ethics complaint against Attorney Hinton) as a collection agency in regard to a previous $5,000.00 sanction against Defendant Taylor Adams for non-compliance with discovery requests.
>
> 7. The Court further FINDS that Mary Emrich's conduct is unconscionable and is an abuse of the ethics process.
>
> 8. The Court further FINDS that Mary Emrich was using the ethics system to manipulate Attorney Robert G. Hinton, and her conduct is outrageous, intolerable, and was maliciously done against Attorney Robert G. Hinton.

The evidence in the record on appeal does not preponderate against these findings made by the Trial Court. Furthermore, these findings in no way violated Plaintiffs' constitutional rights. Plaintiffs were, and still are, free to exercise their constitutional rights.

In their brief on appeal Plaintiffs appear to assert that the Trial Court sanctioned them for filing a complaint with the Board of Professional Responsibility by ruling against them and, allegedly, ignoring the Trial Court's own order. The record on appeal does not support either the assertion that the Trial Court ignored its own order or that the Trial Court sanctioned Plaintiffs by ruling against them. The mere fact that a trial court rules adversely to a party is not tantamount to sanctioning that party. This issue is without merit.

We next consider whether the Trial Court erred "when it failed to rule on the evidence, and ruled contrary to weight and preponderance of the documentary evidence coupled with that presented by Plaintiff's and witness' testimony, and surveyor's and attorney's affidavits." Again, it is extremely difficult to tell what exactly Plaintiffs claim as error with regard to this issue.

Furthermore, Plaintiffs do not point this Court to anything in the record in support of their assertion that the Trial Court "ruled contrary to weight and preponderance of the documentary evidence coupled with that presented by Plaintiff's and witness' testimony, and surveyor's and attorney's affidavits." Plaintiffs' brief fails to cite to anything

in the record, or any relevant authority, or to advance any relevant argument regarding how the Trial Court may have erred with regard to this issue.

Rule 27 of the Tennessee Rules of Appellate Procedure specifies that an appellant's brief must contain, *inter alia*:

> (7) An argument, which may be preceded by a summary of argument, setting forth:
>
> > (A) the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on;

Tenn. R. App. P. 27(a)(7)(A).

A party's failure to comply with the appellate brief requirements set forth in Tenn. R. App. P. 27 can have serious consequences, as we have warned repeatedly:

> Courts have routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue. *See State v. Schaller,* 975 S.W.2d 313, 318 (Tenn. Crim. App. 1997); *Rampy v. ICI Acrylics, Inc.* 898 S.W.2d 196, 210 (Tenn. Ct. App. 1994); *State v. Dickerson,* 885 S.W.2d 90, 93 (Tenn. Crim. App. 1993). Moreover, an issue is waived where it is simply raised without any argument regarding its merits. *See Blair v. Badenhope,* 940 S.W.2d 575, 576-577 (Tenn. Ct. App. 1996); *Bank of Crockett v. Cullipher,* 752 S.W.2d 84, 86 (Tenn. Ct. App. 1988).

> \* \* \*

> As noted in *England v. Burns Stone Company, Inc.,* 874 S.W.2d 32, 35 (Tenn. Ct. App. 1993), parties cannot expect this court to do its work for them. This Court is under no duty to verify unsupported allegations in a party's brief, or for that matter consider issues raised but not argued in the brief. *Duchow v. Whalen,* 872 S.W.2d 692, 693 (Tenn. Ct. App. 1993) (*citing Airline Const. Inc., v. Barr,* 807 S.W.2d 247 (Tenn. Ct. App. 1990)).

*Bean v. Bean*, 40 S.W.3d 52, 55-56 (Tenn. Ct. App. 2000).

As Plaintiffs have failed to advance any relevant reason regarding why or how the Trial Court may have erred with regard to this issue, and further failed to cite anything in the record on appeal, or any relevant authority with regard to this issue, we hold that this issue has been waived[1].

Next, we consider whether the Trial Court erred "when it granted Defendant Contractors' relief from an Agreed Order for which no fraud or mistake was claimed or found." To begin, we note that the Trial Court did not grant Defendants complete relief from the Trial Court's order. Rather, the Trial Court simply granted Defendants additional time within which to comply with the Trial Court's order. As such, no finding of fraud or mistake was necessary.

This leads us to consideration of the next issue as raised by Plaintiffs, i.e., whether the Trial Court erred "when it granted Defendant Contractors' retroactive relief in their *emergency* motion which they never set for hearing for over 8 months." With regard to this issue, the Trial Court specifically found:

> Adams' Emergency Motion for Relief from Order with Supplemental Affidavit by Attorney Robert G. Hinton, as filed July 15, 2011, at 4:05 p.m. is SUSTAINED, given the then medical condition of Taylor Adams, the subsequent medical condition of Taylor Adams, and Emrichs' Subpoena of medical records indeed verified that Adams was in the hospital and ill, and he was entitled to a reasonable extension of time for compliance with the previous Court Order, being an additional thirty (30) days up and through August 19, 2011.

The evidence in the record on appeal does not preponderate against these findings made by the Trial Court. We find no error in the Trial Court's grant of "a reasonable extension of time for compliance with the previous Court Order …."

We next consider whether the Trial Court erred "when it denied Plaintiffs [sic] Motion for Sanctions." The Trial Court specifically found: "Adams promptly complied with the July 13, 2011 Order upon his release from the hospital in early August 2011 by removing the fence and restoring the Emrich property to its previous status." The evidence in the record on appeal does not preponderate against this finding. In fact, Plaintiff Mary Emrich

---

[1]Even if this issue had not been waived, nothing in the record on appeal supports the assertion that the Trial Court failed to rule on the evidence or that the evidence preponderates against any of the Trial Court's findings.

testified at the hearing and admitted that the fence was taken down on August 9, 2011.

In their brief on appeal Plaintiffs assert that the Trial Court should have granted their motion for sanctions under the theories of equity or contempt. The Trial Court, however, found that Defendants complied with the Trial Court's order. The evidence does not preponderate against the Trial Court's findings. As such, we find no error in the Trial Court's denial of Plaintiffs' motion for sanctions.

Finally, we consider whether the Trial Court erred "when failed [sic] to rule from the evidence as to whether Plaintiffs were guilty of unauthorized practice of law." A careful and thorough review of the record on appeal reveals that the claims of the unauthorized practice of law were withdrawn prior to the Trial Court ruling. The Trial Court's order specifically states: "The Court makes no finding as to Emrichs' unauthorized practice of law, said request withdrawn." We find no error in the Trial Court's refusal to rule on this issue as it was withdrawn prior to decision.

We note that at the end of their brief on appeal Plaintiffs argue that they are entitled to an award of expenses on appeal. However, as this Court explained in *Hawkins v. Hart*:

> In order for an issue to be considered on appeal, a party must, in his brief, develop the theories or contain authority to support the averred position as required by Tennessee Rules of Appellate Procedure 27(a). "Where a party makes no legal argument and cites no authority in support of a position, such issue is deemed to be waived and will not be considered on appeal." *Branum v. Akins*, 978 S.W.2d 554, 557 n. 2 (Tenn. Ct. App. 1998); *see also Morris v. Snodgrass*, 886 S.W.2d 761 (Tenn. Ct. App. 1994); *Maryville Housing Authority v. Ramsey*, 484 S.W.2d 73 (Tenn. Ct. App. 1972). Courts have consistently held that issues must be included in the Statement of Issues Presented for Review required by Tennessee Rules of Appellate Procedure 27(a)(4). An issue not included is not properly before the Court of Appeals.

*Hawkins v. Hart*, 86 S.W.3d 522, 531 (Tenn. Ct. App. 2001). Plaintiffs did not raise this issue in their "Statement of Review Issues." As such, this issue has been waived[2].

---

[2]We also note that Plaintiffs are the losing parties in this appeal.

## **Conclusion**

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the appellants, George Emrich and Mary Emrich, and their surety.

_____
D. MICHAEL SWINEY, JUDGE